UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INFORMED CONSENT ACTION NETWORK,<br><br>    Plaintiff,<br><br>    v.<br><br>FOOD AND DRUG ADMINISTRATION, *et al.*,<br><br>    Defendants. | Civil Action No. 25-823 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Informed Consent Action Network brought this action against the Food and Drug Administration and the United States Department of Health and Human Services, seeking records it had previously requested under the Freedom of Information Act. Defendants now move to stay proceedings in this case for eighteen months. Because they face unforeseeable and unprecedented demands for records imposed by a district court in Texas and by Plaintiff itself, the Court will grant the Motion.

**I.    Background**

On December 31, 2019, ICAN submitted a FOIA request to the FDA seeking every email communication from calendar year 2019 among federal employees of the Center for Biologics Evaluation and Research (CBER) Office of Vaccines Research and Review that included or concerned certain individuals or topics. See ECF No. 1 (Compl.), ¶ 6; see also ECF Nos. 1-1–6 (FOIA requests). By 2025, the FDA had neither produced records responsive to the request nor issued a final determination under 5 U.S.C. § 552(a)(6)(A)(i) stating whether it would comply with the request. See Compl., ¶ 12. ICAN then sued FDA and HHS, seeking to compel the

1

agencies' compliance with FOIA. Id. at 1. Defendants have now filed a Motion to Stay proceedings, contending that they face unprecedented demands under FOIA and, despite ongoing hiring and training efforts, are unable to keep up with requests. See ECF Nos. 15 (Mot. Stay), 15-1 (Mem. Supp.) at 2. They also point to their requests for stays in thirteen other FOIA cases in this district, which courts have granted. See Mem. Supp. at 8–9, 8 n.3 (listing cases).

**II.    Legal Standard**

When an agency receives a request for records under FOIA, it shall determine within 20 working days "whether to comply with such request." 5 U.S.C. § 552(a)(6)(A)(i). "Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request." Id., § 552(a)(6)(C)(i). But "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may . . . allow the agency additional time to complete its review of the records." Id.; see also Open Am. v. Watergate Special Prosecution Force, 547 F.2d 605, 616 (D.C. Cir. 1976) (when exceptional circumstances and due diligence are shown, "the time limits . . . in subsection (6)(A) become not mandatory but directory"). "Exceptional circumstances" include those "created by a virtual deluge of requests" that "have prevented the agency from completing its review of the records sought." Open Am., 547 F.2d at 610. Agencies can demonstrate due diligence by reallocating staff to address increased FOIA needs, splitting requests into "simple" and "complex" tracks, and hiring new staff as their budgets permit. Democracy Forward Found. v. Dep't of Just., 354 F. Supp. 3d 55, 61–62 (D.D.C. 2018).

**III.    Analysis**

    A.    <u>Jurisdiction</u>

ICAN's opening argument is that FOIA does not permit the Court to stay such an action. <u>See</u> ECF No. 17 (Resp.) at 8–11.  Plaintiff agrees that when "the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request," FOIA authorizes the court to "retain jurisdiction and allow the agency additional time to complete its review of the records."  <u>Id.</u> at 8–9 (quoting 5 U.S.C. § 552(a)(6)(A)(i)).  It then focuses solely on the words "retain jurisdiction," arguing that the statutory phrase does not permit courts to "grant a stay, suspend proceedings, or excuse compliance" with FOIA.  <u>Id.</u> at 9.  It further contends that granting a stay would "eliminate[] judicial oversight," although it cites no authority for that proposition or its crabbed interpretation of FOIA's requirements.  <u>Id.</u>

This unsupported statutory reading, moreover, runs headlong into a wall of textual evidence and precedent.  On its face, the statute permits courts to "allow the agency additional time to complete its review of the records" upon a showing of exceptional circumstances and due diligence.  <u>See</u> 5 U.S.C. § 552(a)(6)(C)(i).  A different statutory provision excuses certain consequences for an agency's failure to comply with standard time limits if "a court has determined that exceptional circumstances exist," as defined in subparagraph (C), "for the length of time provided by the court order."  <u>Id.</u>, § 552(a)(4)(A)(viii)(II)(cc).  The statute thus clearly contemplates that courts may order stays in FOIA litigation proceedings upon a finding of exceptional circumstances, as that would be the mechanism by which agencies would receive additional time to respond.

Indeed, Plaintiff's own account of a court's role while it "retains jurisdiction" over a FOIA case is consistent with the stay that Defendants seek.  ICAN argues that the statute

3

"contemplates active judicial supervision, continued progress, and court-ordered accountability," Resp. at 9 — all of which still occur, albeit in more attenuated fashion, when a stay is in place. Courts granting a stay motion can require status reports and respond to a party's motion to end the stay as facts on the ground change, preserving their supervisory and accountability functions. See, e.g., ICAN v. FDA, 2024 WL 4836405, at *2 (D.D.C. Nov. 20, 2024) (shortening agency's requested stay from eighteen months to eight); ICAN v. FDA, 2025 WL 2480080, at *2 (D.D.C. Aug. 28, 2025) (imposing six-month stay and ordering status conference "to discuss whether the stay should be extended or lifted"). Nothing in Plaintiff's characterization precludes a judicial stay of proceedings.

Longstanding precedent in this Circuit confirms the propriety of a stay. In Open America, the D.C. Circuit held that subparagraph (C) permits courts to "excuse the Government from the rigid time limits of subparagraphs (A) and (B)." 547 F.2d at 612. The Open America court further concluded that this "safety valve" made sense given Congress's decision to "appropriate[] no additional resources whatsoever" for the implementation of its recent FOIA amendments. Id. And Congress, far from "reject[ing]" the holding in Open America, Resp. at 14, appeared to accept it in its 1996 amendments. See H.R. Rep. No. 104-795, at 24 (1996) (noting amendments were "consistent with the holding of Open America" and "would clarify that routine, predictable agency backlogs . . . do not constitute exceptional circumstances"); S. Rep. No. 104-272, at 17 (1996) (when exceptional circumstances are found, "FOIA does not limit the additional time permitted"). Later D.C. Circuit decisions continued to characterize subparagraph (C) as authorizing courts to extend agencies' FOIA deadlines during litigation in response to exceptional circumstances. See, e.g., Citizens for Responsibility & Ethics in Wash. v. Fed. Elec. Comm'n, 711 F.3d 180, 185 (D.C. Cir. 2013) (noting that while agency's failure to

4

make a determination satisfies requester's exhaustion requirement, "[o]nce in court . . . the agency may further extend its response time if it demonstrates 'exceptional circumstances' to the court"). Plaintiff offers no evidence to rebut these unified sources.

Even if, as Plaintiff asserts, "Open America should be abandoned or narrowly confined," Resp. at 11 (formatting altered), this Court has no authority to reinterpret a statute contrary to existing circuit precedent. As have dozens of other courts, it thus proceeds to the merits of Defendants' Motion to Stay.

        B.        Section 552(a)(6)(C)(i) Stay

It is beyond dispute that "timely disclosure of information of potential public interest was among Congress's central aims in enacting FOIA." Daily Caller v. U.S. Dep't of State, 152 F. Supp. 3d 1, 13 (D.D.C. 2015). The statute permits a stay only if the responding agency can demonstrate that it faces "exceptional circumstances" and has responded to its pending requests with "due diligence." 5 U.S.C. § 552(a)(6)(C)(i). The Court finds that CBER meets both criteria and that an eighteen-month stay is thus warranted.

        1.        *Exceptional Circumstances*

First, CBER has faced skyrocketing FOIA requests since 2019 that show no signs of abating. Compare ECF No. 15-2 (Suzann Burk Declaration), ¶ 26 (range of 255 to 343 annual requests from 2015–18), with id., ¶ 27 (range of 391 to 633 annual requests from 2019–24). The increase in requests has meant that even when CBER's disclosure office "was able to close more requests" in 2024 than in 2023, "the number of pending requests increased," leaving CBER with a significant and growing backlog. Id., ¶ 27. Attendant litigation rates have also exploded, requiring more of CBER's resources: nearly 50 FOIA suits were filed between 2019 and 2024, compared to a single case from 2015 to 2018. Id., ¶¶ 26–27.

5

Sharp, unpredictable increases in FOIA requests and litigation are precisely the type of events that courts have held constitute exceptional circumstances warranting a stay. See, e.g., Democracy Forward Found., 354 F. Supp. 3d at 60 (finding unexpected "near doubling of FOIA demands over a two-year period" constituted "exceptional circumstances"). Nor do there appear to be either cyclical patterns of requests or a period of steady increase that would have put CBER on notice that a period of acceleration was coming. Cf. Daily Caller News Found. v. FBI, 387 F. Supp. 3d 112, 117–18 (D.D.C. 2019) (FOIA requests to FBI not "unexpected" when agency experienced prior increases connected to predictable events, like presidential elections).

What is more, Plaintiff is a major contributor to the onslaught. "Since 2019, Plaintiff has submitted more than 350 FOIA requests seeking CBER records," and it is the plaintiff in two-thirds of CBER's open FOIA lawsuits. See Burk Decl., ¶ 29. When a single party's FOIA requests are "unusually voluminous," it is unlikely that an agency could have anticipated the "massive scope and scale" of resources required to respond. Shapiro v. U.S. Dep't of Just., 2014 WL 12912625, at *1–2 (D.D.C. Dec. 8, 2014). Plaintiff can hardly overload CBER with hundreds of requests and then complain about the consequences of the backlog it created. See ICAN v. FDA, 23-3675, ECF No. 25 (Order) at 2 (granting stay and recognizing "to some extent, this is a problem of Plaintiff's own design").

Beyond the unanticipated "virtual deluge" of requests by Plaintiff and others in recent years, Open Am., 547 F.2d at 610, CBER must contend with another exceptional disclosure requirement: two mandated production orders in separate litigation, Public Health & Medical Professionals for Transparency v. FDA, No. 21-1058 (N.D. Tex.) (PHMPT I), and Public Health & Medical Professionals for Transparency v. FDA, No. 22-915 (N.D. Tex.) (PHMPT II). See Burk Decl., ¶¶ 7–8. In those cases, a federal judge in the Northern District of Texas ordered

CBER to produce between 90,000 and 230,000 pages of records per month, starting in July 2023, in response to two particularly voluminous FOIA requests. See PHMPT I, ECF No. 35 (Produc. Order I) at 3 (requiring 55,000 pages per month); PHMPT II, ECF No. 38 (Produc. Order II) at 1 (after ramp-up period, requiring 180,000 pages per month); Burk Decl., ¶ 8 ("Collectively, PHMPT I and PHMPT II required CBER's disclosure staff to produce at least 90,000 to 110,000 pages per month" initially, and "at times more than 230,000 pages per month.").

This level of judicially ordered production belies practicality. The common practice for courts in this district, whose FOIA docket dwarfs that of any other district in the country, is to require processing 300–500 pages per month — orders of magnitude below what the judge required in the PHMPT litigation. See, e.g., Middle East F. v. U.S. Dep't of Homeland Sec., 297 F. Supp. 3d 183, 187 (D.D.C. 2018) (ordering 500 pages processed per month); Energy Future Coal. v. OMB, 200 F. Supp. 3d 154, 163 (D.D.C. 2016) (declining to increase production from 500 pages per month); Martínez v. Dep't of Just., 2023 WL 9781681, at *1 (D.D.C. Sep. 27, 2023) (similar, and crediting agency's assertion that higher rate would be "detrimental to other requestors") (quotation marks omitted). Just as agencies cannot predict when "a single citizen [will] consume such a vast quantity of [their] FOIA resources," Shapiro, 2014 WL 12912625, at *2, so, too, is it impossible to anticipate that one judge will impart production demands that wildly outstrip other courts' requirements. These outlier orders have forced CBER to reallocate staff, enter new contracts, and hire new employees to focus on PHMPT production — diverting resources from other FOIA requests in the process. See, e.g., Burk Decl., ¶ 32 (reallocation left "small team of six" to "assume primary responsibilities for all other FOIA requests").

The Court generally agrees with Judge Randolph Moss's assessment that "it might seem unfair to the plaintiff in this case . . . to see the bulk of the agency's resources devoted to

satisfying the demands of a single requester, who obtained an extraordinary court order before others were able to obtain more limited judicial relief." Children's Health Def. v. U.S. FDA, 2024 WL 147851, at *3 (D.D.C. Jan. 12, 2024).  That sentiment is diluted, however, by the fact that the plaintiffs in PHMPT have the same counsel as the Plaintiff here.  See Mem. Supp. at 14. While this Court cannot review another district court's order, it can take into account the effects of that atypical demand on the agency's FOIA processing capacity.  The Court thus finds that CBER faces exceptional circumstances warranting a stay.

        2.    *Due Diligence*

CBER has responded to the massive strain on its resources with due diligence.  The office maintains a six-tiered response system to FOIA requests based on the "volume, complexity, or subject matter of the requested records."  Burk Decl., ¶ 17.  Courts in this district have found that a "first-in, first-out multitrack system for processing requests" like CBER's indicates due diligence.  Children's Health Def., 2024 WL 147851, at *3; see also Elec. Frontier Found. v. Dep't of Just., 517 F. Supp. 2d 111, 119 (D.D.C. 2007) (same).  CBER has also acted in good faith to respond to the increased demands it faces by hiring new staff, including two assigned to process non-PHMPT FOIA requests, reassigning staff, and engaging contractors.  See Burk Decl., ¶¶ 34–35; see also Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 895 F.3d 770, 783 (D.C. Cir. 2018) ("[A]gency good faith effort and due diligence are the touchstones underlying FOIA's statutory scheme.") (internal quotation omitted).  And as CBER completes the "labor-intensive process" to train those new hires, more employees will be available to address its backlog moving forward.  Id., ¶ 36.

The Court credits CBER's conscientious reorganization efforts and attempt to balance the mammoth requirements in the PHMPT litigation with the need to continue processing other

FOIA requests. It joins other courts in this district in finding that consistent FOIA policies and targeted hiring in response to exceptional demands are sufficient to demonstrate due diligence. See Children's Health Def., 2024 WL 147851, at *3; Democracy Forward Found., 354 F. Supp. 3d at 62–63 ("modest" staff additions, combined with a first-in, first-out processing system, "are sufficient to establish the agency's diligence"). The Court furthermore agrees with Defendants that, given the magnitude of demands it faces, an eighteen-month stay with intervening status reports is appropriate.

### IV. Conclusion

Because the Court finds a stay is warranted under 5 U.S.C. § 552(a)(6)(C)(i), it need not consider CBER's alternative argument that the Court should exercise its equitable powers to stay litigation under Landis v. North American Co., 299 U.S. 248 (1936). See Mem. Supp. at 1. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: October 16, 2025